**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMON EARL FOULKS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:04-1305** |
| v. | : | **(NEALON, D.J.)** |
| | | **(MANNION, M.J.)** |
| **C.O. KLAPP, C.O. J. NEYLON, C.O. SORNSON, C.O. M. FOOTE, C.O. CASSEL, C.O. SAYLOR, C.O. J. PETERS, C.O. D. MACHAMER, LT. HEATH and P.A. D. INCH,** | : | |
| **Defendants** | : | |

# REPORT AND RECOMMENDATION

Pending before the court are the defendants' motion for summary judgment, (Doc. No. 21), and the plaintiff's cross-motion for summary judgment, (Doc. No. 24). Based upon the court's review of the record in the instant action, it is recommended that the defendants' motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied.

By way of relevant background, the plaintiff, currently an inmate at the United States Penitentiary, Lewisburg, ("USP-Lewisburg"), Pennsylvania, filed this Bivens[1] action pursuant to 28 U.S.C. § 1331[2].

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] The plaintiff originally filed the action in the United States District Court (continued...)

Subsequent to the filing of the appropriate financial papers, (Doc. Nos. 7, 11, 12), by order dated August 16, 2004, it was directed that process issue. (Doc. No. 13). After service of the complaint, the defendants requested and were granted an extension of time to respond. (Doc. Nos. 18 & 19).

On December 22, 2004, the defendants filed a motion for summary judgment, along with a brief and documentation in support thereof. (Doc. Nos. 21 & 22). The plaintiff filed a brief in opposition to the defendants' motion on January 25, 2005. (Doc. No. 23).

On January 26, 2005, the plaintiff filed a cross-motion for summary judgment. (Doc. No. 24). The plaintiff filed a brief and supporting documentation on January 31, 2005. (Doc. No. 25). On February 10, 2005, the defendants filed a brief in opposition to the plaintiff's motion. (Doc. No. 26).

In his complaint, the plaintiff alleges that defendant Klapp assaulted him on November 5, 2002, while the other defendants witnessed the assault. In addition, the plaintiff alleges that when he was placed in four-point restraints, the handcuffs were applied too tight and caused long term nerve damage to his hands and wrists. The plaintiff alleges that he was degraded and

---

[2](...continued)
for the Western District of Missouri, the district wherein he was confined at the time. By order dated June 10, 2004, the action was transferred to this court pursuant to the federal venue statute, 28 U.S.C. § 1391(b). The action was received and docketed in this court on June 17, 2004.

subjected to humiliation when he was forced to urinate on himself because staff denied him the use of a toilet. He further alleges that he was denied meals for a period of twenty (20) hours. Based upon these allegations, the plaintiff is seeking compensatory damages and injunctive relief. (Doc. No. 1).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence

3

to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Id.

The history of the exhaustion requirement for prisoners filing civil rights actions in the federal courts has been summarized as follows:

> Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court. See Patsy v. Board of Regents of Fla., 457 U.S. 496, 516 (1982).  Prisoner suits alleging constitutional deprivations while incarcerated once fell within this general rule.  See Wilwording v. Swenson, 404 U.S. 249, 251 (1971).
>
> In 1980, however, Congress introduced an exhaustion prescription for suits initiated by state prisoners.  See Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. §

1997e (1994 ed.). This measure authorized district courts to stay a state prisoner's § 1983 action "for a period not to exceed 180 days" while the prisoner exhausted available "plain, speedy, and effective administrative remedies." § 1997e(a)(1). Exhaustion under the 1980 prescription was in large part discretionary; it could be ordered only if the State's prison grievance system met specified federal standards, and even then, only if, in the particular case, the court believed the requirement "appropriate and in the interests of justice." §§ 1997e(a) and (b). We described this provision as a "limited exhaustion requirement" in McCarthy v. Madigan, 503 U.S. 140, 150-151(1992), and thought it inapplicable to prisoner suits for damages when monetary relief was unavailable through the prison grievance system.

In 1996, as part of the PLRA, Congress invigorated the exhaustion prescription. The revised exhaustion provision, titled "Suits by prisoners," states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1994 ed., Supp. V).

The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. See Booth v. Churner, 532 U.S. 731, 739 (2001). All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." See ibid.; see also id., at 740, n. 5. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. See id., at 741. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "action [s] ... brought with respect to prison conditions," whether under § 1983 or "any

5

> other Federal law."  Compare 42 U.S.C. § 1997e (1994 ed.) with 42 U.S.C. § 1997e(a) (1994 ed., Supp. V).  Thus federal prisoners suing under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.
>
> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmates grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  <u>Booth</u>, 532 U.S., at 737.  In other instances, the internal review might "filter out some frivolous claims."  <u>ibid.</u>  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.  See <u>ibid.</u>; see also <u>Madigan</u>, 503 U.S., at 146.

<u>Porter v. Nussle</u>,  534 U.S. 516, 523-525 (2002).

As set forth by the defendants, the Bureau of Prisons has established an administrative remedy procedure through which an inmate can seek formal review of any complaint regarding any aspect of his imprisonment.  In order to exhaust appeals under the Administrative Remedy Procedure, an inmate must first raise his complaint with the warden of the institution where he is confined.  Any adverse decision can then be appealed to the Regional Director.  A final appeal may be taken to the Central Office of the Bureau of Prisons.  <u>See</u> 28 C.F.R. § 542, <u>et seq.</u>  No administrative remedy appeal is

considered finally exhausted until considered by the Central Office.  See 28 U.S.C. §§ 542.10, 542.15.

In conjunction with their motion for summary judgment, the defendants have submitted materials which establish that in the ordinary course of business, a computerized index of all administrative requests and appeals filed by inmates is maintained in the Bureau of Prisons' computerized database so that rapid verification can be made as to whether the inmate has exhausted his administrative remedies.  (Doc. No. 22, p. 3 and Ex. 1, ¶ 5).

If a request for administrative remedy is received, answered on the merits and denied or granted, the institution retains a copy of the inmate's request and the warden's response.  However, the defendants' materials provide that, if the request for administrative remedy is rejected on a procedural ground, the request is returned to the inmate with an explanation of the rejection.  Rejected administrative remedies are not considered toward exhaustion.  (Doc. No. 22, pp. 3-4, Ex. 1 ¶ 6).

A review of the Bureau of Prisons' records indicates that the plaintiff has not exhausted his administrative remedies with respect to the claims which he now attempts to raise.  Although the plaintiff has filed some forty-eight (48) requests for administrative remedy, only four (4) of those address the issues raised in the instant complaint, and none of those have been exhausted through the Central Office.  (Doc. No. 22, p. 4, Ex. 1, ¶ 7).

On January 10, 2003, the plaintiff submitted an administrative remedy

request filed to No. 288101-F1, in which he alleged that he was forced to urinate on himself after staff refused to allow him to use the bathroom. In addition, he alleged that his cuffs were applied too tightly which caused him injury to his wrists. The defendants' materials provide that this administrative remedy was subsequently closed and withdrawn by the plaintiff. (Doc. No. 22, p. 4, Ex. 1, ¶ 8).

On April 24, 2003, the plaintiff submitted another administrative remedy request which was filed to No. 297111-F1. This administrative remedy request alleged that his cuffs were applied too tightly and that the physicians' assistant failed to perform two hour restraint checks. This administrative remedy request was denied on May 5, 2003. An appeal was taken by the plaintiff to the regional director's office, which was also denied. No appeal was taken to the Central Office of the Bureau of Prisons. (Doc. No. 22, p. 4, Ex. 1, ¶ 8).

On February 23, 2004, the plaintiff filed an administrative remedy appeal filed to No. 326151-R1, in which he alleged a staff assault. This administrative remedy was rejected for the plaintiff's failure to file the request at the proper level. (Doc. No. 22, p. 5, Ex. 1, ¶ 8).

Based upon the foregoing, the defendants argue that the plaintiff has failed to exhaust his administrative remedies and the instant action should, therefore, be dismissed.

In response to the defendants' materials, the plaintiff argues that he has,

in fact, exhausted his administrative remedies with respect to the claims which he now attempts to raise. To this extent he has attached a response to an administrative tort claim which indicates, in relevant part, "[a]ccordingly, you claim is denied. If you are dissatisfied with this decision, you may seek reconsideration from this office or bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum." (Doc. No. 23, Attachment).

While the plaintiff's submission indicates that he may have properly exhausted his administrative remedies for purposes of an action brought against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2672, et seq., it does nothing to refute the defendants' materials which establish that he has not exhausted his administrative remedies for purposes of bringing a Bivens action against the above-captioned defendants. Thus, the defendants' motion for summary judgment should be granted.

With respect to the plaintiff's cross-motion for summary judgment, again, the plaintiff argues that he has properly exhausted his administrative remedies and should be granted judgment as a matter of law on the merits of his claim. (Doc. No. 24).

As discussed above, the plaintiff has not established that he has exhausted his administrative remedies in order to be allowed to proceed with the instant action. As such, the plaintiff's cross-motion for summary judgment should be denied.

On the basis of the foregoing,

**IT IS RECOMMENDED THAT:**

**(1)** the defendants' motion for summary judgment, **(Doc. No. 21)**, be **GRANTED**; and

**(2)** the plaintiff's cross-motion for summary judgment, **(Doc. No. 24)**, be **DENIED.**

 **s/ Malachy E. Mannion**
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: May 27, 2005**
O:\shared\REPORTS\2004 Reports\04-1305